IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
[West Palm Beach Division]

STRUCTURAL GROUP, INC.,
a Maryland corporation,

      Plaintiff,

v.                                                Case No.:

FCCI COMMERCIAL INSURANCE COMPANY,
a Florida corporation,

      Defendant.                       JURY TRIAL DEMANDED
_____/

## COMPLAINT

Plaintiff, Structural Group, Inc. ("Structural Group"), by its undersigned counsel, hereby complains against Defendant FCCI Commercial Insurance Company ("FCCI"), as follows:

### Parties and Jurisdiction

1. This is an action for declaratory judgment and breach of contract, seeking an adjudication of the rights, duties and obligations of Plaintiff Structural Group and Defendant FCCI, under general liability policies issued by FCCI under which Structural Group is an additional insured.

2. Plaintiff Structural Group is a Maryland corporation with its principal place of business in Hanover, Maryland. Structural Group is a licensed general contractor engaged in and authorized to engage in the business of contracting in Florida. At all times material hereto, Structural Group was the general contractor to various condominium owners for the construction of improvements to real property known as the Harbourage Place Project, the Playa del Mar Project, the Le Chateau Royal Project (located in Lantana, Palm Beach County, Florida), and the Bayshore Towers Project as set forth more fully below.

3. Upon information and belief, Defendant FCCI is a Florida corporation with its principal place of business in Sarasota, Florida.

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 2201 and 1332, in that it involves a dispute between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and (c), because the Defendants conduct business in this District, and a substantial part of the events giving rise to this claim occurred in this District.

**Background**

6. Structural Group was hired by various owners to perform concrete restoration work and to make slab, rebar, wall, stucco and railing repairs and replacements at various condominium projects located throughout Southeastern Florida, including the Playa del Mar Project, the Harbourage Place Project, the Le Chateau Royal Project, and the Bayshore Towers Project.

7. At each of these projects, Structural Group subcontracted the fabrication and installation of the aluminum handrails to Aubrix Enterprises, Inc. d/b/a Arista Aluminum Railings ("Aubrix").

8. Aubrix procured general liability insurance from FCCI for at least three consecutive policy periods: March 29, 2006-07; March 29, 2007-08; and March 29, 2008-09. Copies of the FCCI policies are attached hereto as Composite Exhibit "A."

9. Structural Group is an additional insured under each of the FCCI policies.

10. In order to fulfill its contract with Structural Group, Aubrix subcontracted the work to coat the railings with adhering powder coating to American Powder Coating, Inc. ("APC").

11. The powder coating applied by APC ultimately proved to be defective, resulting in widespread corrosion and other property damage to the railings installed at all four projects.

12. <u>Playa del Mar</u>. Construction at Playa del Mar was performed from 2004 to 2006. The railings for the south side of the project were coated, installed and completed in August 2005. The railings for the north side of the project were completed in June 2006. After completion of the north side railings, the railings on the south side began to corrode and deteriorate. By October 2007, the railings at the north side had also become corroded. The corrosion of the railings, which was the result of deficiencies in APC's work, caused the coating to peel, blister and flake.

13. <u>Harbourage Place</u>. Railings were coated and installed at the Harbourage Place condominiums in December 2004. In April 2006, the railings at Harbourage Place became corroded causing the coating to peel, blister and flake.

14. <u>Le Chateau Royal</u>. Construction at Le Chateau Royal (located in Lantana, Palm Beach County, Florida) was performed from 2005 to 2007. The railings at Le Chateau Royal were installed in June 2007. By December 2008, corrosion began to appear on the railings. In early March 2009, Howard J. Miller, P.E., Inc. performed an inspection of the railings at Le Chateau and discovered significant damage to the aluminum railings caused by underlying corrosion.

15. <u>Bayshore Towers</u>. Construction at Bayshore Towers was performed from September 2006 through September 2007. The railings at Bayshore Towers were installed in

April 2007. At the Bayshore Towers Condominiums, damage to aluminum railings coated by APC was discovered in August 2007. As at the other projects, deficiencies in APC's work resulted in corrosion of the railings and manifests in the form of blistering, peeling and flaking of the railing's coating.

16. It was ultimately determined that the corrosion of the railings was the result of improperly applied powder coating. The powder coating applied by APC failed to utilize a pre-treatment coat, did not include a corrosion resistant primer, and left many of the edges uncoated and exposed to the elements. The failure to properly and fully coat all components of the railings initially allowed the corrosion of any exposed aluminum. The lack of a pre-treatment layer or corrosion resistant primer allowed the corrosion to then spread throughout the railings, resulting in significant damages.

## FCCI Has Refused to Provide Coverage

17. In March 2007, after the initial signs of damage to the railings at Playa del Mar became apparent, Structural Group was served with a notice of claim pursuant to Fl. Stat. Ch. 558 by the Owner at Playa del Mar demanding that Structural Group remediate the damages incurred to the railings.

18. Following receipt of the 558 Notice, in November 2007, Structural Group filed suit against Aubrix and APC, seeking to recover from them all damages arising out of or resulting from the defective application of powder coating to the railings. By reason of, among other things, their contractual indemnification obligations to Structural Group, Aubrix is liable for the acts, failures to act and negligence of APC, as well as for the acts, failures to act and negligence of the manufacturers, suppliers and distributors of the coating applied to the railings

installed at the projects. Structural Group asserts that Aubrix is liable for all of the damages set forth below.

19.    Aubrix tendered the defense and indemnity of the lawsuit to FCCI. Structural Group asserts that Aubrix has coverage under the FCCI policies for nearly all of the damages sought by Structural Group, as outlined below.

20.    Structural Group further asserts that as an additional insured under the FCCI policies, it is entitled to coverage for all or nearly all of the damages sought by Structural Group, as outlined below.

21.    On December 17, 2007, FCCI denied coverage, taking the position that none of the allegations in the Complaint, which included claims for breach of contract and breach of warranty, fell within the insuring agreement of the FCCI policies.

22.    In December 2008, Structural Group amended its Complaint to include allegations of damages at Harbourage Place. Other than the addition of including the damages at Harbourage Place, the allegations in the Amended Complaint were not materially different than those originally brought.

23.    Aubrix tendered the Amended Complaint to FCCI.

24.    On February 6, 2009, FCCI reversed its earlier position and agreed to defend and investigate the claims in the lawsuit under a full reservation of rights. To date, however, FCCI has refused to indemnify Aubrix (as its named insured) or Structural Group (as an additional insured), for the losses incurred at Playa del Mar, Harbourage Place, or any other project, including Bayshore Towers and Le Chateau Royal.

25.    Structural Group has made repeated demands for indemnification from FCCI at all four of the above referenced projects. FCCI has denied any obligation to provide coverage.

26. Most recently, Structural Group sought defense and indemnity from FCCI for a demand it received from Playa del Mar Association, Inc. on November 11, 2011, in which the Association alleged damages in excess of $2.5 million and demanded, among other things, that Structural Group pay $750,000 to resolve damages associated with the railings. FCCI has failed to respond to Structural Group's request for defense and indemnification.

27. Because of FCCI's failure to respond to these demands and provide coverage for the loss, Structural Group has been forced to pursue the direct action against Aubrix, which has resulted in significant legal fees and costs.

28. Notwithstanding the failure and refusal of FCCI to provide coverage for the damages incurred, Structural Group has continued, at its own expense, to investigate and respond to claims.

29. Initially, when the incidents of corrosion appeared to be limited, Structural Group attempted to repair the corroded railings. It was believed at the time that this would be a more cost effective fix than removing and replacing all railings at each project. Therefore, in an effort to mitigate its losses Structural Group attempted to repair the corrosion damage at Playa del Mar.

30. In order to repair the damages resulting from APC's defective powder coating, all corrosion has to be removed using electric sanders and other power tools, followed by detailed cleaning of the railings to remove all chlorides, feathering of the remaining coating, and addition of another coating. Because the repairs at Playa del Mar must be conducted while the condominium units are occupied, access to perform repairs at individual units is difficult. Indeed, for much of the repair work access can only be obtained through the use of swing stages, which significantly adds to repair costs.

31. Repairs at Playa del Mar to damaged railings as a result of APC's defective powder coating have continued to the present time. As stated previously, Structural Group is facing claims at Playa del Mar in excess of $2.5 million.

32. At Harbourage Place, Structural Group entered a settlement agreement with the Condominium Association under which Structural Group agreed to provide a fixed sum of money in exchange for a release of future liability. The liability exposure for future repair obligations was simply too great.

33. At Le Chateau Royal and Bayshore Towers, the corrosion damage resulting from APC's defective application of powder coating was so extensive and widespread that repairs at individual units were not feasible. Corrosion of the railings themselves was too advanced. Therefore, the railings at these two projects had to be removed and replaced at a significant cost.

34. Structural Group's damages by reason of the corroded railings resulting from APC's defective application of powder coating include, but are not limited to:

    A. Amounts paid to repair and replace corroded railings and other resulting damages, including amounts paid to repair contractors and to consultants overseeing the repair;

    B. Fees and costs incurred to prosecute claims against Aubrix and APC;

    C. Fees and costs incurred responding to claims brought by owners; and

    D. Costs and expenses incurred to pursue this action.

35. To date, Structural Group has incurred approximately **$1.75 million** in damages because of the property damage resulting from the defective coating.

## COUNT I
## DECLARATORY JUDGMENT

36. Structural Group repeats and realleges paragraphs 1 through 35 as if fully set forth herein.

37. Upon information and belief, FCCI disputes one or more of the allegations herein, including, without limitation, the assertion of Structural Group that the FCCI policies cover the damages outlined above.

38. By reason of the foregoing, an actual and justiciable controversy exists between Structural Group and FCCI regarding their respective rights and obligations under the FCCI policies, including, but not limited to, (i) FCCI's obligations to defend and indemnify Structural Group as an additional insured in connection with the railing claims; and (ii) FCCI's obligations with respect to Structural Group's claims against Aubrix and APC, to the extent that Aubrix and APC are found to be liable for claims arising out of the defective coating.

39. An Order from this Court will resolve these disputes concerning the parties respective rights and obligations.

40. Structural Group is entitled to a declaratory judgment, inter alia, that:

(i) FCCI is obligated to defend and indemnify Structural Group from and against damages incurred because of property damage caused by the defective powder coating applied to railings at the Playa del Mar Project, the Harbourage Place Project, the Le Chateau Royal Project, and the Bayshore Towers Project, including all damages sought in unit owner and Condominium Association claims;

(ii) Because FCCI has denied coverage, it is estopped and otherwise barred from challenging the terms under which Structural Group has resolved the claims of third-parties, and is bound by those terms as if it had formally consented to the resolution of those claims;

(iii) None of the exclusions cited by FCCI bars recovery of the damages incurred by Structural Group as an additional insured, or bars coverage of Structural Group's affirmative claims against Aubrix and APC; and

(iv) Structural Group is entitled to recover from FCCI all fees and costs incurred pursuing this action.  Section 627.428, Fla. Stat.

## COUNT II
## BREACH OF CONTRACT

41. Structural Group repeats and realleges paragraphs 1 through 35 as if fully set forth herein.

42. Owners served statutory notices on and made claims against Structural Group for property damage, including physical injury to tangible property due to the defective application of powder coating to the railings at the above referenced condominium projects.

43. Structural Group incurred and is continuing to incur significant costs to investigate and resolve owner claims, and to repair property damage.

44. The FCCI policies are valid and binding agreements.  Pursuant to the terms of the FCCI policies, FCCI has an obligation to defend and indemnify Structural Group for damages because of property damage, including all resulting damage from APC's defective powder coating.

45. Structural Group has incurred and continues to incur damages by reason of claims for damages because of "property damage," including claims for damages for the investigation of, and the repair and replacement of aluminum railings damaged by the defective application of powder coating.

46. FCCI is obligated to defend and indemnify Structural Group, but has breached that obligation.

47. Upon information and belief, Aubrix has satisfied all of its obligations under the FCCI policies, including the payment of premiums and provision of timely notice of claims relating to the defective powder coating.

48. Structural Group, as an additional insured, has satisfied all of its obligations under the FCCI policies, including timely notice of claims relating to the defective powder coating.

49. FCCI has refused to honor its coverage obligations.

50. As a direct, proximate and foreseeable result of FCCI's refusal to fulfill its defense and indemnity obligations to Structural Group, and other breaches, Structural Group has incurred, and will continue to incur substantial costs, expenses and other damages, as more fully set forth above.

51. As a result of the aforementioned breaches, FCCI is liable to Structural Group for money damages as an additional insured under the FCCI policies.

52. Structural Group is entitled to recover from FCCI all fees and costs incurred pursuing this action. Section 627.428, Fla. Stat.

**WHEREFORE,** Structural Group demands judgment against FCCI as follows:

(a) Entering declaratory relief, in accordance with paragraph 40 above, and as otherwise appropriate based upon the claims and defenses of the parties;

(b) Awarding money damages, in an amount to be proven at trial;

(c) For attorneys' fees and costs incurred pursuing this action;

(d) For pre-judgment and post-judgment interest; and

(e) For such other and further relief that this Court deems just and equitable.

## JURY DEMAND

Structural Group demands a trial by jury on all issues so triable.

Dated: December 9, 2011

                         Respectfully submitted,

By: *[signature]*
RICHARD R. CHAVES
Florida Bar No. 0114375
rchaves@caseyciklin.com
CASEY CIKLIN LUBITZ MARTENS & O'CONNELL
515 North Flagler Drive, 20th Floor
West Palm Beach, Florida 33401
Telephone:    (561) 832-5900
Facsimile:    (561) 833-4209
*Counsel for Structural Group, Inc.*

11